American Central Insurance Company *v.* C. O. Burkert, Elias P. Burkert and Sanderson Lazarus, Appellants.

*Bond of insurance agent—Surety's liability.*

The wilful and intentional failure of an insurance agent to perform duties, devolved upon him by the orders and instructions of the company, which failure imposed upon the company a liability under a policy, which the agent had been ordered to cancel, involves a forfeiture of a bond conditioned for faithful performance of all duties involving on such agent by any by-laws, rule, instruction or order of the company.

*Principal and surety—Agent's neglect of duty.*

The agent being intrusted with the adjustment of a loss on a policy

which he had disobediently failed to cancel, it is no defense to the surety's liability that the company compromised the claim which had become non-collectible if the agent neglected promptly to advise the company of any failure upon the part of the assured to observe conditions which involved a forfeiture of the claim.

Argued Dec. 5, 1898.    Appeal, No. 207, Oct. T., 1897, by defendants, from judgment of C. P. Schuylkill Co., Jan. T., 1895, No. 366, on verdict for plaintiff.    Before RICE, P. J., ORLADY, SMITH, W. W. PORTER and W. D. PORTER, JJ. Affirmed.    Opinion by W. D. PORTER, J.

Assumpsit.    Before KOCH, J.

It appears from the record and evidence that this was an action to recover on a bond of C. O. Burkert, agent of plaintiff company, from losses resulting to the company by alleged dis-obedience of directions given by the company to the agent.

The facts sufficiently appear in the opinion of the court.

At the trial defendant submitted the following points, which were refused by the court:

[4. C. O. Burkert, the principal defendant, having remitted as per statement for the month of April, 1892, and by check dated May 5, 1892, the premium received from Susan Matulys for insurance policy No. 517791 the company could not make it the duty of its agents to cancel said policy and at the same time retain the premium paid on said policy, and this being the un-contradicted state of facts the verdict should be for the defend-ants.] [2]

[5½. The contract of suretyship requires that the conditions under and according to which the suretyship was given be kept and fulfilled.    If these conditions be enlarged or changed by the party to whom the suretyship is given, without the knowl-edge or consent of the surety, such surety will be relieved from liability.    In this case the conditions under which the surety, Elias P. Burkert, became surety in the bond on which suit was brought, or some of those conditions, were that the American Central Insurance Company, the plaintiff, should conduct and transact its business according to the conditions, rules and stipulations contained in the policies of insurance, issued by said company.    If, therefore, the jury believe that those conditions were enlarged or changed by said company

plaintiff, either by assuming liabilities for loss by fire of the goods of Susan Matulys, in default of proof of loss made by her according to the conditions set forth in her policy of insurance, or in compromising her claim for loss, or in paying her the sum of $750 or otherwise, without the knowledge and consent of the surety then the verdict in this case should be in favor of Elias P. Burkert, surety, whatever may be the verdict against C. O. Burkert, principal.] [4]

The court below refused binding instructions for defendant and directed a verdict for plaintiff.

Verdict and judgment for plaintiff for $557.50. Defendants appealed.

*Errors assigned* were (1) in refusing defendant's second and third points. (2) In refusing defendant's fourth point, reciting same. (4) In refusing defendant's fifth and a half point, reciting same. (5) In not directing a verdict for defendant. (6) In directing a verdict for plaintiff.

*W. A. Marr*, with him *A. P. Spinney* and *C. O. Burkert*, for appellants.—Susan Matulys, not having given notice of her loss by fire within thirty days after the loss occurred, and there being no evidence showing that this condition of the policy was waived by the company, her rights under the policy were forfeited and there rested no obligation on the part of the company to make any payment to her for the loss : Trask v. Insurance Company, 29 Pa. 198.

The same doctrine is followed in Edwards v. Ins. Co., 75 Pa. 378, and Beatty v. Ins. Co., 66 Pa. 9.

When the principal party modifies his contract, it is fatal to its validity as against the surety whose assent has not been obtained, even if it be for his benefit, or if it do him no harm : Bensinger v. Wren, 100 Pa. 505.

An agent although he has not fulfilled his orders is not responsible to a principal unless the principal has sustained an actual injury by the agent's neglect : Story on Agency (6th ed.), sec. 222.

It is a good defense that the misconduct of the agent has not resulted in any loss or damage to the principal : Story on Agency (6th ed.), sec. 236.

*D. C. Henning,* with him *W. J. Whitehouse,* for appellee.—
The company cannot be compelled to enter a technical defense,
which may in their mind not be good policy.

As to the fourth assignment there is no evidence of enlarg-
ing or in anywise changing the character of the conditions of
the bond.

OPINION BY W. D. PORTER, J., July 28, 1899:

The defendant, C. O. Burkert, became the agent of the plain-
tiff company and executed and delivered to said company his
bond, with the other defendants as sureties, in the penal sum
of $500.    The condition of the bond was as follows, viz : "Now,
if the said C. O. Burkert shall well and truly perform the duties
of agent of said company, for and during all the time he shall
hold such position of agent of said company and shall and will
well, truly and faithfully account for and render to said com-
pany all such money, goods, chattels and other effects and
things as may come into his possession or under his care or
charge, while in the service of said company as such agent,
and shall faithfully and to the best of his ability perform all
trust reposed in him and all duties devolved on him by the
laws of the land, or by any by-laws, rule, order or instructions
of said company, now existing or hereafter made, enacted or
adopted, then this obligation to be void, otherwise to remain in
full force."   C. O. Burkert continued to act as agent for the
plaintiff until after the happening of the events out of which
this litigation arose.   The plaintiff, alleging a breach of the
condition of the bond, brought this action and recovered a
judgment for the amount of the penalty, from which judgment
the defendants now appeal.

The first specification of error embraces the rulings of the
learned court below upon two distinct requests for instructions,
submitted by defendants, and, under Rule 15, the errors so
alleged must be considered as waived.   In this case, however,
the same questions are raised by other specifications of error,
so that the defendants suffer no injury from the enforcement
of the rule.   The refusal of the court to affirm defendants'
fourth point is the subject of the second specification of error.

In passing upon the request for instructions embodied in the
point it was incumbent upon the court to consider the undis-

puted facts in the case and the relations of the parties. C. O. Burkert, as the agent of plaintiff, had, on April 19, 1892, issued a policy of insurance, on a stock of goods in a store belonging to Susan Matulys, in the sum of $1,500. He promptly notified the home office of the company, at St. Louis, Mo., of the issuance of this policy and the officers of the company promptly, by letter of April 22, 1892, instructed him to call in this policy and return it to the company duly canceled; as the assured was without a commercial rating and the company never insured property of persons engaged in mercantile pursuits who were without some sort of commercial rating. The policy contained a stipulation that the company might at any time cancel the policy by giving notice of that fact to the assured and refunding the premium, less the pro rata rate for the period the policy was in force. At the time Burkert received the order to cancel the insurance he had in his hands the whole amount of the premium which he had received from the assured. Instead of obeying the explicit order of the company to cancel the insurance, Burkert wrote the company, on April 25, 1892, stating that the assured owned certain property and why she had no rating he could not see, that if he got to see Dun's agent the next time the agent called at the office he would endeavor to have him correct the matter; and that he (Burkert) would take the liberty of letting the policy remain in force until he again heard from the company. It was Burkert's custom, early in each month, to furnish to the company a statement of his account for the preceding month and remit the balance due the company. On May 5, 1892, he sent a statement of his account for April, 1892, including the premium upon the policy involved in this litigation, accompained by a draft, which was duly paid, for the balance shown by the account. On May 7, 1892, the president of the company wrote a letter to Burkert acknowledging the receipt of the account and remittance, but declining to accept the premium on the policy in question, inasmuch as they had requested the cancelation of the policy, and stating that the company held the remittance for that premium subject to Burkert's order. Through some delay in the mails this letter from the president of the company did not reach Burkert until August 10, 1892, after the property had been destroyed by fire; but upon the day of the date of the president's letter,

May 7, 1892, the secretary of the company, also, wrote to Burkert stating that the company declined to recede from its former position with regard to this risk and ordered that the canceled policy be sent to the company by return mail, which letter reached Burkert promptly. On May 17, 1892, Burkert wrote the company, in regard to this insurance, saying: "I called there yesterday to take up your policy as per letters of yours requesting same to be done. The party was out of town, so was unable to do so. On my return found letter herewith enclosed in my mail. I am fully determined to have these people fairly and squarely represented and reported to mercantile agency." The secretary of the company, on May 20, 1892, replied to this letter, again declining to continue the risk and directing Burkert to immediately take up and return the policy to the company. In a letter to the president of the company, written after the fire had occurred, Burkert stated that he had, on May 25, 1892, while at Washington, D. C., written to the company stating intention to cancel this policy. He explained his subsequent failure to do so by asserting: "On my return from wedding trip, about June 1st, I was kept very busy with legal business and though intending to go to Mount Carmel and take up the policy at once did not do so." On June 22, 1892, the secretary of the company again wrote Burkert calling his attention to the fact that he had not yet returned the canceled policy and directing its immediate return. Burkert did nothing and on July 5, 1892, the property covered by the policy was totally destroyed by fire. The facts recited are undisputed. Such being the case, the defendants' fourth point requested the court to charge the jury, that because the company had not returned to Burkert the premium in question, remitted by him on May 5, 1892, the company could not make it the duty of Burkert to cancel the policy. The cases cited in support of this position have no application whatever to the question here involved. This is not the case of a principal repudiating the contract of his agent, while retaining the fruits of that contract. The validity of the contract was admitted and the agent was ordered to act in accordance with its provisions. The contest is not between insurer and insured, but between the company and an agent who had undertaken to discharge certain duties. The bond was conditioned that the

agent should faithfully and to the best of his ability perform all trust reposed in him and all duties devolved on him by any rule, order or instructions of the company. The agent was ordered to cancel the insurance while the premium was still in his hands. He disregarded this order, " took the liberty of continuing the policy" and included the premium in his remittance for the month. He was again promptly notified to take up the policy and return it to the company. He was receiving considerable sums of money as agent for the company, with which he had a current account, and it was his duty to apply the fund in his hands, so far as necessary, to carry out the express order of the company. If the funds of the company in his hands were not sufficient for the purpose it was his duty to promptly advise his principal of that fact, for he alone knew how the account stood until he made his report at the end of the month: London Assurance Co. v. Russell, 1 Pa. Superior Ct. 320. He admits that on the 17th of May, and again on the 25th of that month he wrote to the company that he intended to cancel the insurance, yet he gave no intimation that he did not have in his hands sufficient funds of the company to carry out its instructions. He wrote to the company, after the fire, that it had been his intention during all the time after June 1, to take up this policy, but he had been busy with other matters and had not done so. Upon this branch of the case there is no conflict in the evidence, which clearly establishes a case of failure to perform the duties devolved upon the agent by the persistent orders and instructions of his principal; for this purpose the admissions of Burkert alone are sufficient. He undoubtedly thought that his principal would suffer no injury, but the result proved that he was mistaken, it was his duty to observe the conditions of his bond. To have affirmed defendants' fourth point would have been error and the second specification of error is overruled. The third specification of error presents the same question in another form and is without merit.

The fourth specification of error is founded upon the refusal of the court to charge as requested in point five and one half submitted by defendants. The point embraced two distinct propositions of law and might properly have been refused for that reason, but as the questions involved are vital to defend-

ants' case we will consider them. The first proposition advanced by the point was : "If the conditions be enlarged or changed by the party to whom the suretyship is given, without the knowledge or consent of the surety, such surety will be relieved of liability." There was nothing in the evidence to warrant the request for such instruction. There was no suggestion that the nature or conditions of the employment of Burkert had been changed ; the duties which it was alleged he had neglected were clearly within the condition of the bond. The second proposition embodied in the point was : "If the jury believe that those conditions were enlarged or changed by said company plaintiff, either by assuming liability for loss by fire of the goods of Susan Matulys, in default of proof of loss made by her according to the conditions set forth in her policy of insurance, or in compromising her claim for loss, or in paying her the sum of $750, or otherwise, without the knowledge and consent of the surety, then the verdict in this case should be in favor of Elias P. Burkert, the surety." It is probable that, in the hurry of preparation, more was put into this point than was intended. The court was asked to charge that, if the company compromised the claim for loss, the surety would be discharged, without regard to whether the claim was valid and legally enforceable and the compromise just and reasonable or the reverse ; and further, that if the company paid the $750, without the consent of the surety, the latter was freed from liability ; without regard to whether the amount was legally collectible from the company or was a voluntary payment of a loss from which it had by the terms of the policy been discharged. If there was a valid and legally enforceable claim uncertain in amount against the company and they could in good faith make a fair and just compromise as to amount to be paid, they were not compelled to resort to litigation, but might make the compromise and pay the amount agreed upon, without discharging the surety, although the amount paid would not fix the extent of his liability. The point was properly refused and the fourth specification of error is dismissed, but the question which defendants may have intended to raise by this point, may properly be considered under the sixth specification.

Defendants' sixth point asked for binding instructions and was properly refused ; the fifth specification which assigns that

refusal as error does not require discussion.   The learned court below gave binding instructions in favor of plaintiff, which is the subject of the sixth assignment of error, and involves the whole case.   The testimony of the defendant, C. O. Burkert, as well as his letters, and the evidence produced by the plaintiff, involved no contradiction, and clearly established that C. O. Burkert had wilfully and intentionally failed to perform the duties devolved upon him by the orders and instructions of the company, and that his failure imposed upon the company, under the policy which he had been ordered to cancel, a liability which involved a forfeiture of the condition of his bond.   But it is contended by defendants that the claim of the assured against the company had ceased to be legally enforceable, and that the payment by the company was a voluntary act for which the agent and his surety were not answerable.   The policy contained a stipulation that, "In case of loss, the assured shall give immediate notice in writing to this company, and shall, within thirty days after the happening of such loss, render to this company a particular account of said loss, under oath, etc.   And a refusal to comply with the above requirements shall cause a forfeiture of all claims under this policy."   If the assured had forfeited her claim under the policy, from failure to observe the conditions recited, the company could not, after the expiration of the period within which the conditions were to be complied with, revive the obligation of its agent and his surety by making a payment which it could not have been compelled to pay. Had the assured forfeited her claim?   The loss occurred on July 5, 1892; on the same day the assured communicated with Burkert, the local agent, who at her instance immediately wrote the home office of the company, advising them of the loss, of the other insurance upon the property and stated "the insured is waiting for the representatives of the companies."   This was sufficient compliance with the requirements of the policy as to preliminary notice, the company at once accepted it as such and sent their general agent to investigate: Home Ins. Co. v. Davis, 98 Pa. 280.   Within ten days after the loss the general agent of the company visited the scene of the fire with Burkert and they interrogated the assured.   At that interview with the assured the general agent told Burkert to get duplicate bills and various information necessary, in order to arrive at an estimate

of the amount of property on hand preceding the fire. The same day Burkert was directed to obtain such evidence as he could as to the merits of the case and to endeavor to reach an equitable adjustment of the loss. This was clearly within the line of the duties covered by defendants' bond. From that time, which was twenty days before the assured was required to furnish proofs of loss, the whole matter was in the hands of Burkert, who carried on the negotiations with the assured. Burkert was thus authorized to receive the proof of loss, and was invested with authority to receive it as required by the terms of the policy, or to extend time for furnishing it; and if the proof was furnished in the manner required by him the policy was, in respect to that requirement, not avoided: Lycoming County Mutual Insurance Co. v. Schollenberger, 44 Pa. 259. Burkert was in charge of this whole matter, and if the assured did not furnish to him the proof of loss within the limit of time fixed by the policy and he (Burkert) had not extended the time, it was his duty to report that fact to the company, which he did not do. He was acting as the agent of the company, in receiving the proof of loss and endeavoring to effect an equitable settlement, and it was his duty promptly to advise the company of any failure upon the part of the assured to observe conditions which involved a forfeiture of the claim. Burkert gave the company no notice of failure of the assured to comply with conditions imposed, and, if the assured had so failed, the withholding by Burkert of information of that fact was a lapse from duty which rendered his surety liable under the bond. Burkert subsequently wrote to the company as follows, viz: "I made a decided effort to not only get evidence, but to keep Matulys from bringing suit, and further on in getting the compromise through successfully." He wrote the general agent of the company, on November 1, 1892, saying: "In re Susan Matulys, Mount Carmel, I am happy to say that we have reached a conclusion about this policy. She agrees to surrender same on payment of $750;" again, on November 5, 1892, he wrote, "I think the compromise claim of $750 a good one." The company paid to the assured the amount at which Burkert had adjusted the loss. It is clear that the negotiations of Burkert with the assured had saved the claim under the policy from forfeiture. It is admitted that the amount of the loss chargeable against

this policy exceeded the penalty of the bond.    Burkert undoubtedly thought the risk a safe one, but his acts, prompted by kind intentions towards a neighbor, were a departure from his duty to observe the instructions of his principal, and involved the latter in a liability which had not ceased or been discharged prior to the time the claim was settled and paid.    All the specifications of error are dismissed.

Judgment affirmed.

